IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STORAGECRAFT TECHOLOGY CORP.<br><br>Plaintiff,<br><br>vs.<br><br>SYMANTEC CORP.<br><br>Defendant. | Case No. 2:07 cv 856 CW<br><br>**ORDER AND MEMORANDUM DECISION GRANTING STORAGECRAFT'S MOTION TO COMPEL AND DENYING SYMANTEC'S CROSS-MOTION FOR PROTECTIVE ORDER**<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Brooke C. Wells<br><br>Consolidated with case no. 2:08 cv 194 TS for discovery purposes |

Before the court are two motions. Plaintiff, StorageCraft Technology Corporation, seeks to compel Defendant, Symantec Corporation, to produce documents, answer interrogatories and make witnesses available for deposition.[1] In response, Symantec filed a cross-motion for protective order seeking an "order prohibiting StorageCraft . . . from seeking discovery into Symantec's trade secret and confidential information before it identifies its allegedly misappropriated trade secrets with reasonable particularity."[2] Under the reasonable particularity standard a party must identify its alleged trade secrets "with adequate specificity to inform the [other party] what it is alleged to have misappropriated."[3] After considering the parties'

---

[1] *See* motion p. 2.
[2] Cross-motion p. 1.
[3] *Sit-Up Ltd. v. IAC/Interactive Crop.*, 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008); *see also Harvey Barnett Inc. v. Shidler et al.*, 338 F.3d 1125 (10th Cir. 2003); *Rivendell Forest Products, LTD. v. Georgia-Pacific Corp.*, 28 F.3d 1042 (10th Cir. 1994).

memoranda, and the recent decision entered by Judge Waddoups,[4] the court GRANTS StorageCraft's motion to compel and DENIES Symantec's cross-motion for protective order.

In September 2008, Symantec and StorageCraft held a meet and confer conference concerning *inter alia*, StorageCraft's definition of its trade secrets. During the conference Symantec requested that StorageCraft:

> 1) reduce its trade secret identification to writing; 2) identify all of the source code StorageCraft contended was given to Symantec pursuant to the License Agreement; and 3) clarify what aspects of that code (e.g. files version, portions and/or lines) constituted StorageCraft's alleged trade secrets and whether any aspects of code were publicly available. Symantec requested that StorageCraft confirm what source code files described in the License Agreement were actually delivered to Symantec and, if they were delivered, on what dates such code was delivered. . . . StorageCraft agreed to produce to Symantec the portions of source code deposited with the Copyright Office.[5]

Following these negotiations, StorageCraft provided the following definition of its trade secrets via letter:

> All Source Code of all Licensed Software and Deliverables received by PowerQuest and/or Symantec under the subject License Agreement, including all [S]ource [C]ode used for testing, and the Source Code or all derivative works derived or created from such Licensed Software and Deliverables received by PowerQuest and/or Symantec under the License Agreement, not including at this time any Object Code or other documentation or confidential information.[6]

StorageCraft also stated that its trade secrets do not include "the few pages of partially unredacted source code necessarily filed with the U.S. Copyright Office as part of a copyright application."[7] Based upon the record before the court, it appears StorageCraft has provided

---

[4] Following Judge Waddoups' decision the court encouraged StorageCraft to contact Symantec to try and resolve the instant dispute. On February 10, 2009, StorageCraft notified the court that it had attempted a resolution with Symantec but the parties had failed to reach a compromise.
[5] Zei Declaration p. 1-2.
[6] Reply p. 3 (alterations in original).
[7] Barnes Declaration p. 3, docket no. 78. Scott Barnes is the Chief Technology Officer for StorageCraft.

Symantec a copy of the source code it deposited with the Copyright Office as it agreed to do during the meet and confer conference.[8]

The issue before the court is whether the identification of trade secrets by StorageCraft is sufficient to allow Symantec to understand what StorageCraft is claiming was misappropriated.[9]

As noted by another court, "Trade secret cases present unique and difficult problems with respect to the timing and scope of discovery."[10] Much of this difficulty arises from the competing policies found in trade secret cases.[11] To deal with these difficulties courts have adopted a number of different approaches.[12] For example, some courts have bifurcated discovery so that discovery of non-confidential information takes place first, followed by the discovery of the confidential information that forms the basis for a plaintiff's trade secret claim.[13] In contrast, other courts have ordered simultaneous discovery of trade secret information.[14] What is apparent from the various approaches is the fact that what may be the proper approach in one case is not the proper approach in another. "Unfortunately, there is no talismanic procedure the Court may apply in order to obtain the best result in any given case."[15] But, regardless of the approach, it is apparent that "[t]he reasonable particularity standard requires that the alleged trade secret be described 'with adequate specificity to inform the

---

[8] Attached to the Declaration of Jason P. Nixon filed by StorageCraft is a copy of this source code.
[9] *See Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 2008 WL 2064516 *2 (E.D. Mich. Dec. 6, 2007).
[10] *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 679 (N.D.Ga. 2007); *see generally* Kevin R. Casey, *Identification of Trade Secrets During Discovery: Timing and Specificity*, 24 AIPLA W.J. 191, 195 (1996) (discussing the problems with the preservation of a litigants' interests in maintaining the confidentiality of their trade secrets during discovery).
[11] *See DeRubeis*, 244 F.R.D. at 680-81 (discussing competing policies).
[12] *See* Casey, *Identification of Trade Secrets During Discovery* at 212-41 (discussing approaches).
[13] *Cf. Microwave Rsrch. Corp. v. Sanders Assocs. Inc.*, 110 F.R.D. 669, 672 (D.Mass. 1986) (stating that "before a plaintiff is entitled to . . . broad discovery into a defendant's trade secrets, it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim").
[14] *E.g., Cataphote Corp. v. Hudson*, 316 F.Supp. 1122 (S.D.Mass. 1970).
[15] *DeRubeis* 244 F.R.D. at 681.

defendants what it is alleged to have misappropriated.'"[16]  Therefore the question that arises here-has StorageCraft met the adequate specificity standard in this case?

Symantec argues StorageCraft must "identify the particular files, versions, portions and/or lines of code that it claims Symantec misappropriated before it can obtain discovery into Symantec's trade secrets and confidential information."[17]  In support of this position Symantec points to this court's order in *The SCO Group, Inc. v. Int'l Business Machines Group*, No. 2:03-cv-294-DAK[18] and *Compuware Corp v. Int'l Business Machines*.[19]  Further, Symantec contests StorageCraft's claim that "all" in its claimed trade secrets means "all derivative works without exception."[20]  According to Symantec, "StorageCraft has no conceivable basis to claim all of Symantec's derivative works as *its own* trade secrets."[21]

In response, StorageCraft argues it has identified its trade secrets with reasonable particularity.  StorageCraft claims "all source code received under the License Agreement or derived or created from such code (with the exception of the publicly available portions of the source code) constitutes StorageCraft's trade secret."[22]  StorageCraft continues, arguing this definition complies with the court's order in SCO and there is no "extra requirement" as implied by Symantec that is not met.  Finally, StorageCraft argues *Compuware* is inapplicable to this case because it did not involve the licensing of source code, but software tools, and there was no

---

[16]*Dura Global*, 2008 WL 2064516 at *2. (quoting *Sit-Up Ltd.* 2008 WL 463884 *11).  There are many benefits to this legal standard.  It helps define the scope of the case, s*ee Xerox Corp. v. IBM Corp*, 64 F.R.D. 371 (S.D.N.Y. 1974), it ferrets out needless lawsuits undertaken as "fishing expeditions" to discover a competitor's trade secrets, it provides protection for defendants by helping them with their defense, s*ee e.g.*, *Litton Sys. Inc. v. Sundstrand Corp.*, 750 F.2d 952, 954 (Fed.Cir. 1984), and it prevents a plaintiff from changing a case to simply fit around the discovery it receives.
[17] Op. and Mem. in Supp. Cross-Motion p. 9.
[18] This order is attached to the Zei Declaration as Exhibit D.
[19] 2003 WL 23212863 (E.D.Mich. 2003).
[20] Op. and Mem. in Supp. Cross-Motion p. 15.
[21] *Id.* (emphasis in original).
[22] Reply p. 4.

requirement by the court that Compuware identify the lines of source code in the products it claimed were misappropriated.[23]

In SCO v. IBM the court ordered SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM."[24] Here, StorageCraft has provided an identification of the source code it believes is protected by stating that it is "all source code received under the License Agreement or derived or created from such code"[25] minus the publicly available code which StorageCraft provided the Copyright Office. Now this is not a "bit by bit"[26] identification of the code, but the court finds it is sufficient <u>at this stage</u> to meet the reasonable particularity requirement. Many of Symantec's arguments focus on the ultimate merits of StorageCraft's alleged trade secrets, which is improper at this stage of the litigation as noted by Judge Waddoups.[27]

Moreover, under Federal Rule 26, the court has broad discretion to: limit the time, place and manner of discovery,[28] and modify the timing and sequence of discovery for the convenience of the parties and witnesses "in the interests of justice . . . ."[29] Thus, what may have been proper in one case, though instructive and helpful, may not be appropriate for this case.[30]

Finally, the court agrees with StorageCraft and finds *Compuware* inapplicable to the instant case. In *Compuware*,[31] the plaintiff was seeking preliminary injunctive relief to stop the

---

[23] *See id.* p. 5.
[24] Order dated December 12, 2003, p. 2.
[25] *Id.* at p. 4.
[26] *Rivendell*, 28 F.3d at 1045.
[27] *See* Order and Memorandum Decision dated January 16, 2009, p. 3.
[28] *See* Fed.R.Civ.P. 26(c) (2008).
[29] *Id.* 26(d)(2).
[30] *See DeRubeis*, 244 F.R.D. at 681.
[31] 2003 WL 23212863 (E.D.Mich. 2003).

alleged "theft of its proprietary information and trade secrets, . . . ."[32] The court found Compuware failed to meet the standard of proof at the preliminary injunction stage and therefore was not entitled to a preliminary injunction on the trade secrets claim.[33]

Here, the court is concerned with the reasonable particularity standard which is different from those standards used in determining whether a party is entitled to a preliminary injunction. Moreover, the court in *Compuware* did not require the plaintiff to provide all the specific lines of source code at issue, as Symantec invites this court to do, but merely noted that Compuware had "for whatever reason failed" [34] to do so up to that point.

Accordingly, based on the forgoing, the court GRANTS StorageCraft's motion to compel and DENIES Symantec's cross-motion for protective order.

Dated February 11, 2009

Brooke C. Wells
United States Magistrate Judge

---

[32] *Id.* at *1.
[33] *See id.* at *8.
[34] *Id.*